# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARIO S. ENGLISH JR.,

    Plaintiff,

    v.

MARCELLES GARDNER, et al.,

    Defendants.

Case No. 16-cv-5295

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Mario English brings two claims under 42 U.S.C. § 1983 against the defendant correctional officers for allegedly using excessive force while securing Plaintiff to a bedframe at the Stateville Correctional Center and demonstrating deliberate indifference to his medical needs while he was restrained. [66]. Defendants Gardner, Eskridge, and Berry (Defendants) moved to dismiss the claim against them for failing to state a cause of action. [73]. For the reasons explained below, this Court grants Defendants' motion.

## I.     The Complaint's Allegations

In February 2015, Plaintiff was incarcerated at the Stateville Correctional Center. [66] ¶ 4. At that time, Defendants Nushardt, Dethrow, Battung, Sapia, Gee, and Pontarelli served as part of the Illinois Department of Corrections' (IDOC) tactical team at Stateville. *Id.* ¶¶ 8–14, 35–36.

On February 26, 2015, Nushardt, Dethrow, Battung, Sapia, Gee, and Pontarelli put Plaintiff in four-point restraints on a metal bed frame in Stateville's

healthcare unit. *Id.* ¶¶ 14–15, 37. The bed did not have a mattress. *Id.* ¶ 15. Defendants strapped Plaintiff's arms and legs to the upper bars of the bed's metal headboard and footboard. *Id.* ¶ 16, 38. In doing so, the officers hoisted Plaintiff's extremities at least 24 inches above the bedframe, so that only Plaintiff's backside rested on the bedframe. *Id.* Plaintiff asserts that Defendants acted intentionally and maliciously when they tied him to the bedframe. *Id.* ¶ 38. In total, Plaintiff spent over 16 hours in these restraints. *Id.* ¶ 20.

Plaintiff claims that the tightness and elevated position of his restraints caused him intense pain in his feet and legs. *Id.* ¶¶ 17–19, 39. The restraints left indentations in Plaintiff's skin and, because the officers positioned Plaintiff's legs so far above his heart, he lost circulation in his legs and they fell asleep. *Id.* ¶¶ 17–18, 39–40. Plaintiff states that his legs felt "as if they were on fire," and that he experienced a "sharp stabbing sensation" for roughly the first three hours that he was restrained. *Id.* ¶¶ 17–19, 23, 41–42.

At some point during that three-hour period, Defendants Marcelles Gardner, Herman Eskridge, and Jason Berry each encountered Plaintiff in his restraints. *Id.* ¶¶ 21, 24–25, 29. Gardner, Eskridge, and Berry worked as correction officers at Stateville, but did not form part of the tactical team that put Plaintiff in the four-point restraints. *See id.* ¶¶ 5–7. Plaintiff's claims against these defendants stem from their alleged failure to help Plaintiff or address his medical needs while he was restrained. *See id.* ¶¶ 21, 24–27, 29–33.

Specifically, Plaintiff alleges that Defendants prevented Plaintiff from stretching his legs or using the restroom, causing Plaintiff to urinate on himself. *Id.* ¶¶ 21–22. Plaintiff also alleges generally that throughout this three-hour period Plaintiff repeatedly yelled for assistance. *Id.* ¶ 23. According to Plaintiff, he told Eskridge about his extreme leg pain many times and asked to see a nurse or mental health staff member, but Eskridge refused to help him. *Id.* ¶ 24.

Shortly after, Gardner entered Plaintiff's healthcare unit cell. *Id.* ¶ 25. Plaintiff told Gardner that his legs hurt and that he needed medical attention. *Id.* Gardner told Plaintiff that he had notified Berry—Gardner's lieutenant—about Plaintiff's condition but that Gardner did not have the authority to order Berry to come to the healthcare unit. *Id.* ¶ 26.

After about three hours, someone removed Plaintiff's restraints, and his ankles were red and showed indentations from the restraints. *Id.* ¶¶ 27–28. Plaintiff then began to stretch his arms and legs. *Id.* ¶ 29. While Plaintiff was stretching, Berry arrived at the healthcare unit and Plaintiff explained his leg pain and loss of blood flow. *Id.* Berry "grabbed" Plaintiff's left foot and moved it around, causing Plaintiff to yell out in pain. *Id.*

Plaintiff initiated this suit in May 2016. [1]. He amended his complaint in October 2017 and for a second time in March 2018. [53, 66]. Count I of Plaintiff's second amended complaint alleges that Gardner, Eskridge, and Berry used excessive force and violated the Eighth Amendment by failing to remove or loosen the restraints that caused Plaintiff extreme pain. [66] ¶ 30. Plaintiff also alleges

that Defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to his medical needs and disregarding a risk of serious harm. *Id.* ¶¶ 31–32. Count II alleges that Defendants Nushardt, Dethrow, Battung, Sapia, Gee, and Pontarelli used excessive force and demonstrated deliberate indifference in violation of the Eighth Amendment. *Id.* ¶¶ 44, 45.

This opinion addresses Gardner, Eskridge, and Berry's motion to dismiss Count I of Plaintiff's complaint for failure to state a cause of action. [73-1].

## II.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A motion to dismiss does not test the merits of a case. *Autry v. Nw. Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998).

To survive a motion to dismiss, a complaint must first provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility

standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating a complaint, this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, automatically accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III. Analysis

To survive Defendants' motion to dismiss his § 1983 claim, Plaintiff must allege facts showing that Defendants, acting under the color of state law, deprived him of a right secured by the Constitution or any federal law. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). Plaintiff must also allege that Defendants "personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008).

Defendants seek to dismiss Count I of Plaintiff's second amended complaint, which asserts that Defendants used excessive force against Plaintiff and demonstrated deliberate indifference to Plaintiff's medical needs. This Court addresses each aspect of Plaintiff's claim in turn.

### A. Excessive Force

The Eighth Amendment's Cruel and Unusual Punishments Clause protects

prisoners from unnecessary and wanton infliction of pain; what qualifies as "unnecessary and wanton" varies with the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state a claim for excessive force under the Eighth Amendment, Plaintiff must allege facts indicating that Defendants used force "maliciously or sadistically to cause harm," rather than "in a good-faith effort to maintain or restore discipline." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (quoting *Hudson*, 503 U.S. at 5). Gardner, Eskridge, and Berry seek to dismiss this claim on the grounds that Plaintiff fails to allege that they did not act in good faith. [73-1] at 5–6.

To determine whether a prison official had the mental state required under the Eighth Amendment excessive force standard, courts consider a variety of factors, including the "need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt*, 224 F.3d at 619. Although a plaintiff need not show a "significant injury," a "de minimis use of physical force" generally does not suffice to state a claim. *See id.* at 620 (concluding that the "simple act of shoving" a prisoner did not constitute excessive force under the Eighth Amendment). Plaintiff can state a viable excessive force claim without alleging a significant injury, however, if prison officials used force maliciously or sadistically. *Caffey v. Maue*, 679 F. App'x 487, 492 (7th Cir. 2017).

Generally, courts afford prison officials broad deference in formulating and executing policies necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986). But corrections officers must still have a legitimate purpose or penological justification for restraining an inmate. *See, e.g.*, *Verser v. Smith*, No. 14-CV-1187, 2016 WL 3595727, at *2–3 (N.D. Ill. July 5, 2016). In many cases, placing a violent or disruptive inmate in bodily restraints for an extended period does not violate the Eighth Amendment. *See, e.g.*, *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006) (holding that using five-point restraints on an inmate who promised to "fight to the death" did not constitute excessive force).

Here, Plaintiff's complaint indicates that he was restrained to prevent harm to himself. [66] ¶ 30. Preventing self-harm provides a legitimate reason to place an inmate in restraints. *See Payette v. Hoenisch*, 284 F. App'x 348, 351 (7th Cir. 2008)*; see also Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995) (noting that bodily restraints may "be used on violent inmates who pose a threat to others or suicidal inmates who pose a threat to themselves"). Absent some allegation showing that an official acted maliciously or sadistically in implementing such legitimate restraints, the mere fact that the inmate experienced some discomfort or distress does not demonstrate an Eighth Amendment violation. *See Payette*, 284 F. App'x at 350–51 (affirming judgment for prison officials where inmate failed to show they did not act in a legitimate effort to prevent the inmate from harming himself, even though restraints caused him pain).

Plaintiff asserts that Defendants used excessive force when they failed to remove or loosen his restraints, even though he complained about his discomfort for hours. [66] ¶ 30. Plaintiff alleges no facts indicating that Defendants kept Plaintiff in restraints maliciously or sadistically, or only to cause Plaintiff pain. Nor does Plaintiff allege that Defendants used force gratuitously. In fact, Plaintiff's sole indication as to why Defendants kept him restrained suggests that the restraints were intended to prevent Plaintiff from harming himself. *See id.* Because preventing self-harm provides a legitimate reason for Defendants' actions, Plaintiff must allege facts showing that Defendants acted maliciously or sadistically to state an Eighth Amendment excessive force claim. *See Payette*, 284 F. App'x at 351. This remains true even if Plaintiff suffered some pain or anxiety while restrained. *See id.* Plaintiff fails to do so, and therefore fails to state a claim for excessive force against Defendants. *See, e.g.*, *Guitron v. Paul*, 675 F.3d 1044, 1045–46 (7th Cir. 2012) (affirming dismissal of complaint where inmate plaintiff failed to allege facts showing malicious or sadistic intent on the part of the defendant officer).

While Plaintiff does not have to *prove* that Defendants acted with the requisite malicious intent, he must plead a sufficient factual basis to create the reasonable inference that Defendants acted wrongfully. *See Iqbal*, 556 U.S. at 678. Plaintiff has not done so, and this Court dismisses Plaintiff's excessive force claim as to Berry, Eskridge, and Gardner under Count I.

### B. Deliberate Indifference

Count I of Plaintiff's second amended complaint also alleges that Defendants demonstrated deliberate indifference to Plaintiff's medical needs. [66] ¶ 32. To

state a claim for deliberate indifference, a plaintiff must plead two elements: "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition."[1] *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). A medical condition qualifies as "objectively serious" if it "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). A prison official shows deliberate indifference "when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Arnett*, 658 F.3d at 751.

While the Seventh Circuit has acknowledged that a wide range of medical conditions can meet the objective prong of a deliberate indifference claim, the application of external restraints to an inmate does not constitute such a condition. *Cf. Elyea*, 631 F.3d at 861 (listing "a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit" as qualifying medical conditions). Nor does Plaintiff cite any legal authority showing that a minor and temporary interference with circulation qualifies as a serious medical condition. *See* [76] at 7–8. Finally, case law in this circuit indicates that, absent some resulting medical complication, a single instance of self-urination does not constitute a serious medical condition. *Compare O'Malley*, 465 F.3d at 805 (assuming that a rash resulting from an inmate being left in his own vomit could

---

[1] Plaintiff's complaint alludes only to Defendants' alleged deliberate indifference to Plaintiff's medical needs. *See* [66] ¶ 32. Accordingly, this Court need not address Plaintiff's allegations under any other deliberate indifference theory, such as that pertaining to inmates' conditions of confinement.

constitute a serious medical condition), *and Ganaway v. Adamson*, No. 15-cv-00784-SMY, 2015 WL 4761141, at *3 (S.D. Ill. Aug. 12, 2015) (finding that the rash the inmate suffered after exposure to a urine- and blood-stained mattress might qualify as a serious medical condition), *with De La Paz v. Peters*, 959 F. Supp. 909, 915 (N.D. Ill. 1997) (prison's failure to provide daily showers to incontinent inmate did not constitute deliberate indifference). Plaintiff alleges no such harm here. Based upon Plaintiff's complaint, this Court cannot conclude that Plaintiff suffered any kind of medical condition "so obvious" that lay persons like Defendants "would perceive the need for a doctor's attention." *Gomez*, 680 F.3d at 865.

In short, Plaintiff never specifies what medical condition he suffered, and does not develop the factual allegations that might support finding an objectively serious medical condition. Even assuming, however, that Plaintiff suffered from an objectively serious medical condition, he still fails to state a claim for deliberate indifference because he does not satisfy the second element of his claim.

Turning to the subjective prong of the deliberate indifference inquiry, Plaintiff must allege more than mere negligence by Defendants. *Arnett*, 658 F.3d at 751. Rather, deliberate indifference "approaches intentional wrongdoing." *Id.* A prison official must know about an inmate's serious medical need and then disregard that need. *See Payette*, 284 F. App'x at 352 (concluding that a jail official could have been deliberately indifferent when he knew a self-harming inmate needed mental health treatment and he failed to provide it for seven days).

In *Payette*, the Seventh Circuit indicated that leaving someone in mental health restraints for seven days without treatment could constitute deliberate indifference, but the Court noted that restraining a prisoner "for a short period of time ordinarily does not violate the constitution," as long as officials have a legitimate reason to do so. *Id.* Here, Plaintiff's allegations as to Eskridge, Berry, and Gardner only cover three hours, during which Gardner contacted his superior— Berry—about Plaintiff's condition. *See* [66] ¶¶ 21–29. As noted above, the only indication as to the rationale for Plaintiff's restraints suggests that their purpose was to prevent Plaintiff from self-harming. *Id.* ¶ 30. Under these circumstances, Plaintiff does not show that Defendants acted with deliberate indifference. *See Payette*, 284 F. App'x at 352.

Indeed, Defendants ostensibly relieved Plaintiff's pain when one of them released Plaintiff from the restraints. [66] ¶¶ 27–29. Plaintiff's complaint, at best, may show that Defendants were merely negligent for not releasing him or notifying their superior officers sooner. But that does not amount to deliberate indifference or callous recklessness; prison officials must act responsibly when handling inmates' medical needs, but they "are not required to act flawlessly." *Lee v. Young*, 533 F.3d 505, 511–12 (7th Cir. 2008) (concluding that prison officials' failure to completely seclude an asthmatic inmate from secondhand smoke was at worst negligent but not deliberately indifferent). Despite Plaintiff's discomfort, his complaint fails to show that Defendants ignored any "substantial risk of harm" from the three hours that they left him restrained. *Arnett*, 658 F.3d at 751.

Based upon Plaintiff's sparse complaint, this Court cannot infer either that Plaintiff suffered an objectively serious medical condition or that Defendants acted in reckless disregard to that condition. *See Iqbal*, 556 U.S. at 678. Accordingly, this Court dismisses Plaintiff's deliberate indifference claim as to Eskridge, Gardner, and Berry.

### C. Leave to Replead

Federal Rule of Civil Procedure 15(a)(2) instructs district courts to freely give leave to amend "when justice so requires." This is the first time this Court has addressed Plaintiff's claims, and Plaintiff should be afforded an opportunity to correct the deficiencies outlined here. Should any amended pleading suffer similar defects, however, this Court may deny a future motion to amend the complaint. *See Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011). At this stage, however, Plaintiff may replead his claims against Eskridge, Gardner, and Berry if he can do so consistent with his obligations under Rule 11.

## IV. Conclusion

For the reasons explained above, this Court grants Defendants' motion. [73]. This Court dismisses Count I of Plaintiff's second amended complaint without prejudice.

Dated: July 11, 2018

Entered:

John Robert Blakey
United States District Judge